FILED

2016 MAY -6 PM 4: 15

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **ROSA MACIAS RIOS,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **NO. EP-13-CV-0379-LS** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial before a United States Magistrate Judge, the case was transferred to a United Stated Magistrate Judge for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas. [ECF No. 16]

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in August 1947, completed high school and two years of college, and is able to communicate in English. (R:25, 107, 125, 127)[1] She has experience working in quality assurance inspection and management. (R:16, 35, 36, 131) Plaintiff discontinued working on

[1] Reference to the Administrative Record, contained in Docket Entry Number 15, is designated by an "R" followed by the page number(s).

November 1, 2010, due to her medical conditions of diabetes, back pain, knee problems, blurred vision, and shakes.[2] (R:11, 25-26, 126)

## II. ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

Plaintiff contends that the Administrative Law Judge's residual functional capacity determination is not supported by substantial evidence because she failed to properly consider all of Plaintiff's limitations. In particular, Plaintiff asserts that the ALJ failed to properly consider her non-severe conditions, her limitations standing and walking, her obesity, and her treating physician's opinion. She contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## III. PROCEDURAL HISTORY

In November 2010, Plaintiff filed an application for DIB benefits, with an alleged onset date of November 1, 2010. (R:9, 107) Her application was denied initially and upon reconsideration. (R:9, 40, 41) Upon Plaintiff's written request for a hearing, an administrative hearing was held on July 9, 2012. (R: 9, 24-39, 56-57) Administrative Law Judge Myriam Fernandez Rice issued her decision on August 15, 2012, finding Plaintiff not disabled, and denying benefits. (R:9-17) The Appeals Council denied Plaintiff's request for review on September 30, 2013. (R:1-4)

---

[2] Plaintiff reported that she stopped working due to her conditions and for other reasons, namely, that she was terminated because of a disagreement with her employer. (R:126)

Plaintiff filed the instant cause on November 21, 2013. [ECF No. 1] The Court granted her motion to proceed in forma pauperis, and ordered the complaint filed. [ECF Nos. 4, 5] Defendant filed an answer and transcript of the administrative proceedings on February 5, 2014. [ECF Nos. 13, 15] Plaintiff filed a brief in support of her claims on April 4, 2014. [ECF No. 19] On May 2, 2014, Defendant filed a brief in support of the Commissioner's decision denying benefits. [ECF No. 20] This case was transferred to United States Magistrate Judge Leon Schydlower on December 8, 2015. [ECF No. 21]

## IV. DISCUSSION

### A. STANDARD OF REVIEW

The court's review of the Commissioner's decision is limited to two inquiries: whether the decision is supported by substantial evidence on the record as a whole; and whether the Commissioner applied the proper legal standard. *See Perez v. Barnhart*, 415 F3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner and not for the courts to resolve. *Perez*, 415 F.3d at 461.

### B. EVALUATION PROCESS

A claimant bears the burden of proving disability, which is defined as any medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant

from engaging in substantial gainful activity. *See* 42 U.S.C. §§ 423(d)(1); 20 C.F.R. § 404.1505(a); *Masterson*, 309 F.3d at 271. The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520. However, if the claimant has shown she cannot perform her previous work, the burden shifts to the Commissioner to show that there is other work available that the claimant can perform. *Crowley v. Apfel*, 197 F.3d. 194, 198 (5th Cir. 1999). If the Commissioner establishes other gainful employment, the burden shifts back to the claimant to prove she is unable to perform the alternative work. *Id.*

The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett*, 67 F.3d at 564. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Id.*

The mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is Plaintiff's burden to establish disability and to provide or

identify medical and other evidence of her impairments and how they affect her ability to work. *See* 20 C.F.R. § 404.1520(c). Her own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

**C. THE ALJ'S DECISION**

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date.[3] (R:11) She determined that Plaintiff had severe impairments of diabetes mellitus type II, high blood pressure, an abnormal lateral tibial plateau of the right knee, and mild degenerative disc disease. (R:11) However, she found Plaintiff's blurred vision, headaches, heart palpations, and shakiness to be non-severe impairments. (R:12) She further found that Plaintiff's depression was not a medically determinable impairment. (R:12) The ALJ determined that none of Plaintiff's impairments met or medically equaled the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:12)

The ALJ next determined that Plaintiff retained the functional capacity to perform a wide range of light work as defined in 20 C.F.R. § 404.1567(b). (R:12) *See* 20 C.F.R. § 404.1567.[4] She ruled that Plaintiff could lift up to 20 pounds occasionally and up to 10 pounds frequently, stand or walk for approximately 6 hours in an 8-hour workday, and sit for approximately 2 hours in an

---

[3] Plaintiff was found to meet the insured status requirements of the Social Security Act through June 30, 2013. (R:11)

[4] Light work is defined as work that involves "lifting no more than 20 pounds at a time and frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). The full range of light work involves standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Social Security Ruling 83-10,

8-hour workday. However, she held that Plaintiff could never climb ladders, ropes, or scaffolds, could occasionally kneel, must avoid concentrated exposure to extreme temperatures, wetness, humidity, excessive vibration, and unprotected heights, and should avoid concentrated use of moving machinery. (R:12)

Based upon vocational expert testimony, the ALJ ruled that an individual with Plaintiff's RFC could perform Plaintiff's past relevant work as a quality assurance manager/inspector as actually and as generally performed.[5] (R:16) The ALJ concluded that Plaintiff was not disabled from her alleged onset date through the date of the ALJ's decision. (R:16-17)

**D. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff asserts that the ALJ erred in determining her residual functional capacity by failing to include limitations related to her non-severe conditions, her ability to stand or walk, and her obesity, and by failing to give proper weight to the opinion of her treating physician. The Defendant responds that the ALJ properly considered Plaintiff's impairments and her treating physician's opinion, and that substantial evidence supports the ALJ's decision.

Residual functional capacity ("RFC") is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite her physical and mental limitations. *Perez*, 415 F.3d at 461-62. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R.

---

[5] *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("DOT") § 168.287-014 (Inspector, Quality Assurance) (4th Ed., Rev. 1991).

§§ 404.1529, 404.1545. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

**1. Medical Evidence**

The medical evidence of record demonstrates the following:

On December 6, 2010, Plaintiff was seen by her treating physician Dr. Angela Jones-Allen, who had been treating her since 2009 primarily for diabetes and hypertension. (R:185-86, 205-08) Aside from an upper respiratory infection, Plaintiff complained of right knee pain. She weighed 168 pounds at that time with a BMI of 29.8.[6] Upon examination, the physician found that Plaintiff had right knee pain upon motion. Dr. Jones-Allen assessed her with knee joint pain, hypertension, hyperlipidemia, and diabetes uncontrolled, but improved.

On January 12, 2011, a consultative examination was performed by Dr. Gabriela Hunko for Plaintiff's complaints of right knee pain, vision problems, diabetes, and right shoulder problems. (R:248-49) Plaintiff also complained of fatigue off and on, and pain with walking or sitting. However, she reported being able to do housework, chores, drive, cook, and perform activities of daily living without assistance. She denied any chest pain. She weighed 169 pounds, was 63.5 inches tall, and had a BMI of 29.46. Upon physical examination, Dr. Hunko found her eyes, ears, nose, and throat to be within normal limits. Her neck had normal extension, flexion, and rotation. She was alert and oriented. Dr. Hunko observed that Plaintiff had equal strength in her

---

[6] BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.' SSR 02-1p.

upper and lower extremities of 5/5 with no sensory loss. Plaintiff exhibited a normal gait and was able to walk heel-to-toe, jump, and squat. Review of her musculoskeletal system showed normal movements in her joints, although guarded with respect to active range of motion in her right shoulder. Passive range of motion was full. Plaintiff's left knee was tender to palpation and had mild crepitus.[7] Dr. Hunko assessed Plaintiff with diabetes mellitus, uncontrolled and in poor compliance, and with joint pain in the shoulder and lower leg.

Dr. Hunko ordered x-ray examinations of the right knee, which showed mild medial and lateral femoral compartment joint space loss. (R:252) She also ordered x-ray exams of the lumbar spine, which revealed mild to moderate degenerative changes and some mild joint space loss. (R:250-51)

On February 22, 2011, Dr. Kim Rowlands, a state agency physician, completed a Physical Residual Functional Capacity evaluation of Plaintiff. (R:260-67) Based upon a review of the medical records, Dr. Rowlands concluded that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds, could stand or walk about 6 hours in an 8-hour workday, sit about 6 hours, and push or pull unlimitedly. The physician found Plaintiff's postural movements to be occasionally limited, but found no manipulative, visual, communicative, or environmental limitations. Another state agency physician affirmed the findings. (R:268)

Upon referral from Dr. Jones-Allen, Plaintiff underwent x-ray examinations on March 9, 2011, for both knees. The exams produced normal results with no evidence of fracture, meniscal calcification, or soft tissue abnormality. (R:309)

On June 12, 2012, Dr. Jones-Allen examined Plaintiff during a follow-up visit for diabetes,

---

[7] Crepitus, or crepitation, refers to a crackling sound produced by the rubbing together of bone fragments or joint surfaces. *Dorland's Illustrated Medical Dictionary*, 418 (29th ed. 2000).

hypertension, and hyperlipidemia, knee pain, and low back pain. (R:273-75) Plaintiff weighed 181 pounds with a BMI of 32.1. Dr. Jones-Allen observed her to be oriented in time, place, and person, well developed, and in no acute distress. Examinations of her head, neck, chest, cardiovascular, and neurological systems were normal. Examination of her musculoskeletal system was normal except for her knees, which had pain with motion and had tenderness on palpation and ambulation. Dr. Jones-Allen assessed her with diabetes controlled, hyperlipidemia, hypertension, lumbago, and knee joint pain.

On the same date, Dr. Jones-Allen completed a Medical Source Statement. (R:269-72) She determined that Plaintiff could occasionally lift or carry 10 pounds, frequently lift or carry less than 10 pounds, stand or walk less than 2 hours in an 8-hour workday, sit for less than about 6 hours in an 8-hour workday, and push and pull with her lower extremities in a limited capacity. She concluded that Plaintiff was functionally limited because of low back pain, sciatica, and "severe" bilateral knee pain. The physician further determined that Plaintiff could never perform any postural movements, but could perform manipulative, visual, or communicative movements without any limitations. Regarding environmental factors, Dr. Jones-Allen concluded that Plaintiff should avoid temperature extremes, humidity, wetness, vibration, hazardous machinery, and heights to avoid exacerbating her pain symptoms.

**2. Plaintiff's Non-Severe Impairments**

In assessing an individual's RFC, an ALJ must consider only limitations and restrictions attributable to medically determinable impairments and must address both exertional and nonexertional capacities. *See* SSR 96-8p. Plaintiff contends that the ALJ in this case failed to consider the limitations related to her non-severe impairments of headaches, heart palpations, and

shakiness in determining her RFC. She makes this assertion based upon the following statement made by the ALJ in her decision:

> Since I have already determined that her blurred vision, headaches, and shakiness, are not severe impairments, I will address the remaining impairments in my decision.

(R:13) However, review of the decision shows that the ALJ stated that she considered all of Plaintiff's symptoms in making her RFC findings. (R:12) Further, she expressly mentioned Plaintiff's vision problems and shakiness in evaluating limitations assessed by the treating physician, Dr. Jones-Allen. (R:15) The ALJ stated that:

> After careful consideration of the evidence, I find that the claimant's *medically determinable impairments* could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R:16) (emphasis added) Thus, because the ALJ referenced Plaintiff's "medically determinable impairments" in her findings, she necessarily considered both the severe and non-severe impairments in her findings.

More importantly, the ALJ thoroughly examined and discussed the medical evidence to show the functional limitations resulting from Plaintiff's medically determinable impairments, both severe and non-severe. The ALJ stated that despite Plaintiff's complaints of shakiness and vision problems, her treating physician found no manipulative, visual, or hearing limitations. (R:15, 271) Further, the ALJ observed that no physician prescribed, nor did Plaintiff use, an assistive device for stability, and that during the consultative examination she was able to jump, squat, and walk heel-to-toe. (R:15) Also, Plaintiff's cardiovascular exams were normal at both the consultative examination and the most recent treating physician's examination. (R:249, 273) Nor

is there any mention by her physicians of any headache-related symptoms causing any functional limitations during the relevant period.

With regard to Plaintiff's depression, Plaintiff does not contest the ALJ's finding that her depression was not a medically determinable impairment. To the extent that she argues that the ALJ erred by failing to consider her depression, her argument fails. The ALJ was not required to consider the effects of any symptoms of depression on her ability to perform work activities because the record does not establish depression as a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

Therefore, as shown by the decision, the ALJ properly considered all of Plaintiff's medically determinable impairments and incorporated into the RFC those functional limitations that she found supported by the record. Plaintiff has not demonstrated that her non-severe impairments caused any additional functional limitations beyond those included in the ALJ's RFC determination.

Even assuming the ALJ failed to properly consider the non-severe impairments, any error the ALJ committed would be considered harmless. The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Brown*, 837 F.2d 1362, 1364 (5th Cir. 1988). Errors are considered prejudicial only if they "would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris*, 864 F.2d at 335. Plaintiff has not shown that her non-severe impairments resulted in any functional limitations beyond those included in the RFC by the ALJ. Consequently, Plaintiff fails to demonstrate prejudice and her argument fails.

**3. Plaintiff's Ability to Stand and Walk**

Plaintiff claims that the ALJ failed to account for her limited ability to stand or walk in determining her RFC. She further claims that the evidence shows that she is unable to perform the 6 hour standing/walking requirement of light work. For support, she cites to her testimony of low back pain and knee pain and resulting functional limitations, her physical examinations showing pain with motion of the knee, and the x-rays results showing mild medial and lateral femoral compartment joint space loss.

The ALJ in this case carefully considered the medical records of Plaintiff's impairments and made credibility determinations regarding Plaintiff's self-reported symptoms and limitations. She weighed the medical source statement of Dr. Jones-Allen, limiting Plaintiff to less than 6 hours of standing, and only gave it partial weight because she found it to be unsupported by the record. She considered the fact that none of Plaintiff's physicians prescribed, nor did Plaintiff use, an assistive device to aid in stability. Despite finding right knee and shoulder pain, the consultative physician assessed no functional limitations. Dr. Jones-Allen found no abnormalities or symptoms on musculoskeletal and neurological examinations, aside from the joint knee pain and lumbago. Further, the ALJ considered Plaintiff's reported activities of daily living and found them inconsistent with her alleged functional limitations. Plaintiff reportedly did all of the household chores.

Plaintiff claims that any alleged error in determining her RFC has prejudiced her because a faulty RFC taints the remaining steps of the sequential analysis. However, even had the ALJ erred in determining Plaintiff's RFC, Plaintiff has not demonstrated how she would be prejudiced in this regard. In the next step in the sequential analysis, it is Plaintiff's burden to show that she is unable

to perform her past relevant work given the RFC found by the ALJ. The fact that a claimant is unable to perform certain requirements of her past relevant work does not mean that she is unable to perform "past relevant work" as that phrase is used in the regulations. *See Leggett*, 67 F.3d at 564. The ALJ may consider the description of a claimant's past relevant work either as specifically performed or as generally performed in the national economy. *See id.* at 564-65.

At the hearing, the VE testified that an individual with Plaintiff's RFC could perform her past relevant work as a quality assurance inspector or manager as that job is defined in the DOT. (R:37) Based on the VE testimony, the ALJ found that Plaintiff could perform her past work as a quality assurance manager/inspector both as actually and as generally performed. (R:16) This finding is supported not only by the VE testimony and medical evidence cited above, but also by Plaintiff's reported daily living activities. Despite reporting being able to walk only two blocks before having to stop and rest, Plaintiff reported that she did light chores, went grocery shopping, did laundry, cleaned, drove, and attended church. (R:160-67)

Moreover, the ALJ considered Plaintiff's testimony that she collected unemployment benefits after she stopped working until May 2012 as "essentially holding herself out for work." (R:28) A claimant's receipt of unemployment benefits is considered inconsistent with a claim for disability and is therefore an appropriate factor for an ALJ to consider in weighing credibility. *See Jamison v. Colvin*, No. SA-15-CA-166-JWP, 2015 WL 5822592 at *5 (W.D. Tex. Oct. 5, 2015) (citations omitted) (finding plaintiff's efforts to obtain employment and receipt of unemployment benefits appropriate factors for ALJ to consider in weighing credibility); *accord Thibodeaux v. Astrue*, 324 Fed. Appx. 440, 445 (5th Cir. 2009) (fact that plaintiff met conditions for unemployment benefits during relevant time period was factor contributing to substantial evidence

in support of ALJ's findings).

Thus, despite Plaintiff's assertion that she cannot stand or walk the 6 hours required for light work, she has not shown that she cannot perform her past relevant work as generally performed. Consequently, she fails to demonstrate prejudice and her argument fails.

**4. Obesity**

Plaintiff contends that the ALJ failed to consider the effects of obesity in making her RFC determination. Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but must instead "evaluate each case based on the information in the case record." *Id.*

For the relevant time period, the medical evidence of record reflects that Plaintiff's weight ranged from 168 pounds to 181 pounds, and that her body mass index or BMI ranged from 29.8 to 32.1. (R:273, 277, 282, 291) Aside from the weight and BMI notations, however, Plaintiff fails to demonstrate how obesity affected her functioning level beyond that assessed by the ALJ. The record is silent as to any diagnosis of obesity, or any findings by Plaintiff's doctors attributing any functional limitations due to obesity. Beyond her own subjective complaints, Plaintiff fails to produce evidence of any functional limitations due to obesity beyond the RFC determined by the ALJ.

Although the ALJ did not specifically address Plaintiff's obesity, there is no evidence in the record that this condition limited Plaintiff more than is reflected in the ALJ's RFC. *See Hobbs v.*

*Astrue*, 627 F.Supp.2d 719, 727 (W.D. La. 2009) (although the ALJ did not mention claimant's obesity or discuss the impact of her obesity on her ability to work, he "did, in effect, consider the impact of claimant's obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity."). By considering the symptoms of Plaintiff's other impairments, all of which may be aggravated by obesity, the ALJ, in effect, considered the impact of any alleged obesity on her ability to work.

Even assuming that the ALJ's failure to address obesity constitutes non-compliance with SSR 02-1p, Plaintiff has failed to demonstrate prejudice by such failure. *See Mays*, 837 F.2d at 1364; *see also Beggs v. Colvin*, Civ. No. 4:14-CV-129-O, 2015 WL 5542540 at *6 (N.D. Tex. Aug. 31, 2015), *adopted by* 2015 WL 5547010 (N.D. Tex. Sept. 15, 2015) (ALJ's failure to address obesity did not require remand where Plaintiff failed to show obesity affected her functioning, and thus failed to show prejudice). Consequently, Plaintiff's contention fails.

**5. Treating Physician's Opinion**

Lastly, Plaintiff contends that the ALJ failed to attribute proper weight to the Medical Source Statement from Dr. Jones-Allen, Plaintiff's treating physician. In her decision, the ALJ stated that she afforded partial weight to the physician's opinion. However, Plaintiff claims that the opinion is entitled to greater weight because there is no conflicting opinion in the record and the findings are not based solely on subjective complaints. Defendant responds that Dr. Jones-Allen's opinion is inconsistent internally and with other substantial evidence in the record, and therefore, is not entitled to any greater weight.

Ordinarily the opinions of a treating physician who is familiar with the claimant's conditions should be accorded considerable weight in determining disability. *Greenspan v.*

*Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citation omitted). If the treating physician's opinion on the nature and severity of an impairment is well supported by objective medical evidence and not inconsistent with other substantial evidence, it will be given controlling weight. 20 C.F.R. § 404.1527(c)(2). If not given controlling weight, a treating source's medical opinion should be weighed in light of certain factors including: (a) the length of the treatment relationship and the frequency of examination; (b) the nature and extent of the treating relationship; (c) the supportability of the source's opinions in light of the relevant medical evidence and explanation provided by the source; (d) the consistency of the opinion with the record as a whole; (e) the specialization of the medical source; and (f) any other relevant factors. 20 C.F.R. § 404.1527(c)(2)-(6). "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (quotation omitted).

Review of the evidence shows that Dr. Jones-Allen treated Plaintiff from 2009 to 2012. In June 2012, Dr. Jones-Allen provided a Medical Source Statement finding that Plaintiff could lift and carry no more than ten pounds, could stand and walk less than two hours, and sit less than six hours in an 8-hour work day. (R:269-70) In support of her conclusions, she stated that Plaintiff had low back pain, sciatica, and severe bilateral knee pain. (R:270) She further found that Plaintiff could never perform any postural activities, and found certain environmental factors affecting her impairments, including extreme temperatures, humidity/wetness, vibration, and hazardous machinery or heights. (R:272)

The ALJ attributed only partial weight to Dr. Jones-Allen's statement because the record

did not support the extent of limitations found by the physician. In her treatment notes dated June 12, 2012, Dr. Jones-Allen found no abnormalities or symptoms on musculoskeletal and neurological system examinations, aside from finding joint knee pain and lumbago. The x-ray examinations done at her request were normal. Consultative examiner Dr. Hunko assessed no functional limitations, despite finding right knee and shoulder pain. During the consultative exam, Plaintiff walked with a normal gait and was able to walk heel-to-toe, jump, and squat.

As described above, the ALJ noted that no physician had prescribed, nor did Plaintiff use, an assistive device for stability. The ALJ also considered the fact that Dr. Jones-Allen did not refer Plaintiff to physical therapy or to a specialist, restrict her activities, or prescribe any pain medications for her neck, knee, or low back pain. In fact, Plaintiff testified that she did not take any pain medications. (R:26)

Dr. Jones-Allen's findings of essentially less than sedentary functional capacities are also inconsistent with other record evidence considered by the ALJ. For example, during Plaintiff's application interview the Field Officer observed no physical limitations or signs of disability. (R:123) Additionally, the ALJ reviewed Plaintiff's reported activities of daily living and found them to be inconsistent with her alleged functional limitations. In her most recent Functional Report, Plaintiff reportedly did household chores, laundry, cleaning, prepared light meals, went grocery shopping, and attended church.

Thus, the Court finds that the ALJ properly weighed Dr. Jones-Allen's medical source statement and explained the basis for the weight given. It was within the ALJ's authority to attribute only partial weight to Dr. Jones-Allen's opinion and greater weight to the state agency physicians' opinions, finding them to be more consistent with the record evidence. Consequently,

the Court finds no error in the ALJ's consideration of the medical source statement. Moreover, because substantial evidence supports the ALJ's RFC determination, Plaintiff is unable to demonstrate prejudice. Plaintiff's contention is, therefore, without merit.

**V. CONCLUSION**

Accordingly, based upon a review of the evidence, the Court finds that the ALJ's RFC determination comports with relevant legal standards and is supported by substantial evidence. Therefore, Plaintiff's assertions of error are without merit. Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

**SIGNED** and **ENTERED** on May 6, 2016.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**